IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


BENJAMIN J. ROSCOE and
GERALDINE M. ROSCOE,

        Plaintiffs,

vs.                                            No. CIV 03-454 JH/LFG

CHERYL GIBBS et al.,

        Defendants.


**FINDINGS AND RECOMMENDED DISPOSITION[1]
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST CHERYL GIBBS**

      THIS MATTER comes before the Court on the Motion to Dismiss or for Summary Judgment or Alternatively for a More Definite Statement [Doc. 8], filed by Defendants Cheryl Gibbs, K. Steve Cordova, Candy Biggers, and Sam Chavez ("Defendants").  Plaintiffs Benjamin J. Roscoe and Geraldine M. Roscoe ("the Roscoes") filed a response [Doc. 15], and Defendants did not file a reply. The motion is now ready for ruling.  This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to the Court's Order of Reference [Doc. 32].

      For the reasons given below, the Court finds that Defendants' motion is well-taken and recommends that summary judgment be granted in favor of Defendants.  In addition, the court

---

[1]**Within ten (10) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation.  A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendation.  Therefore, if no objections are filed within time allotted, no appellate review will be allowed.**

recommends that Plaintiff Benjamin J. Roscoe's Motion for Default Judgment Against Cheryl Gibbs [Doc. 23] should be denied on the merits.

## **Factual and Procedural Background**

The Roscoes, proceeding *pro se*, filed their complaint against the four named Defendants in New Mexico state court on March 14, 2003.[2] Their allegations are somewhat vague. The Roscoes claim that the Defendants wilfully and recklessly conducted a pattern of harassment, slander, victimization, extortion, and racial discrimination against them, causing them emotional distress. In particular, the Roscoes claim that Defendants published false and defamatory information to the effect that the Roscoes made false statements on their income tax returns and that the Roscoes owed more federal income tax than they actually owed, and they labeled Benjamin Roscoe "a dangerous person."

The Roscoes claim also that the Defendants wilfully and recklessly victimized them by "imputing false assessments of federal tax" against them for the sole purpose of enriching themselves, and that they intended to obtain property from the Roscoes by the use of coercion, and to restrict their freedom of action by "forc[ing the Roscoes] to spend Christmas Holiday time to search for and produce documents for Defendants which documents had previously been provided to Defendants." The Roscoes further assert that the Defendants treated them less favorably because of their race or, although this allegation is not entirely clear, perhaps because of their national origin.[3]

On April 15, 2003, the United States of America, through the United States Attorney for the

---

[2] The Defendants are all IRS employees who were acting in the scope of their employment in the service of the United States government. [S*ee* Certification, Doc. 1; and discussion below].

[3] The complaint states that Defendants treated the Roscoes unfavorably "Because They Perceived Plaintiffs to be Overly Successful Foreigners," *see*, Complaint, title to Count V; and in their response, the Roscoes allege that Defendants discriminated against them because they "are not indigenous persons." [Doc. 15, at ¶ 1].

District of New Mexico and on behalf of the four individual Defendants, filed a Notice of Removal, stating that the individual Defendants "were made parties to this action as a result of their actions while acting in their official capacity as officers or employee [sic] of the Internal Revenue Service." [Doc. 1, at ¶ 1].

The United States also asserts in the Notice of Removal that "Plaintiffs filed their Complaint for the purpose of preventing Defendants Cheryl Gibbs, K. Steve Cordova, Candy Biggers, and Sam Chavez from performing in their official capacity as officers or employees for actions occurring in connection with their performance of duties on behalf of the United States." [Doc. 1, at ¶ 2].

The United States cites 28 U.S.C., § 1331, federal question, as the basis for federal jurisdiction and states further that the Notice of Removal is filed pursuant 28 U.S.C. §1442, *inter alia*. That section provides for removal to federal court of any action commenced in state court against "any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for . . . the collection of the revenue." 28 U.S.C. § 1442(a)(1).

Following removal, a third Plaintiff, The Brook Apartments, L.L.C., was dismissed from the action by order dated January 14, 2004 [Doc. 28], on grounds that Plaintiff Benjamin J. Roscoe was attempting to represent The Brook Apartments, L.L.C. in spite of the fact that he is not a licensed attorney. The Court found it necessary to inform Mr. Roscoe, on several occasions, that although he was entitled to represent his own interests as a *pro se* litigant, the Brook Apartments, L.L.C., as a corporate Plaintiff, was required by local rule to be represented by an attorney. Mr. Roscoe is not a licensed attorney, and no other counsel had entered an appearance on behalf of the corporate

Plaintiff. *See*, Letter to The Brook Apartments, L.L.C. from the Clerk of Court dated April 17, 2003; Order Denying Request to Waive D.N.M.LR-Civ. 83.7 [Doc. 9]; Order Striking Discovery [Doc. 12]; Order Striking the Brook Apartments, L.L.C.'s Response to the Motion to Dismiss [Doc.17]; Order to Show Cause [Doc. 18]; Order Imposing Sanction and Recommended Disposition That The Brook Apartments Be Dismissed Without Prejudice [Doc. 20].

Proceeding under Fed. R. Civ. P. 12 (b)(6), the Defendants filed a Motion to Dismiss rather than an Answer.[4] In this motion, Defendants ask the Court for dismissal or summary judgment in Defendants' favor; in the alternative, they seek an order for more definite statement. The Roscoes resist the motion and ask the Court to issue summary judgment in their favor.

## Standards for Summary Judgment

The Court has considered the declarations submitted by Defendants, as well as the affidavit submitted by Plaintiffs in response to Defendants' motion, and it will treat Defendants' request as a motion for summary judgment. Fed. R. Civ. P. 12(b). The Court finds that the parties had sufficient notice that the matter would be decided on summary judgment, based on the facts that Defendants titled their motion as one for dismissal or for summary judgment, both parties submitted affidavits, and Plaintiffs specifically asked the Court to deny summary judgment. Fed. R. Civ. P. 12(b); David v. City and County of Denver, 101 F.3d 1344, 1351-51 (10th Cir. 1996).

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970);

---

[4]No Answer is due from Defendants until after the Motion to Dismiss is resolved. Fed. R. Civ. P. 12(a)(4). Defendants therefore cannot be in default, and Plaintiffs' Motion for Default Judgment against Cheryl Gibbs [Doc. 23] should be denied on the merits.

4

Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

The Court in considering a motion for summary judgment construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Foster v. Alliedsignal, Inc., 293 F.3d 1187 (10th Cir. 2002).

## **Discussion**

The individual Defendants deny the allegations of the complaint and assert that their only contact with the Roscoes has come in connection with their work as employees of the United States Internal Revenue Service (IRS). Each individual Defendant submitted a separate declaration to this effect. Because of this, they claim, the Roscoes are bound by the strictures surrounding lawsuits

5

against federal employees, including the basic presumption of sovereign immunity.

The Roscoes counter that Defendants were acting outside the scope of their employment in committing the alleged torts, and therefore sovereign immunity does not apply and their suit should be considered a simple tort action under state law, against individual tortfeasors. They argue that "The alleged facts that Defendants are current or former employees of the Internal Revenue Service who have been involved with in [sic] the assessment or collection of Plaintiffs' federal taxes is merely incidental and has no bearing on the tortuous [sic] acts complained-of." They state further that, "[t]he beliefs of the United States [as to whether the individual Defendants were acting the course of their employment, apparently] are of no import in the matters at bar." [Doc. 15, at ¶¶ 3-4]. In this, the Roscoes are wrong.

When plaintiffs allege that federal employees committed acts within the scope of their employment which would constitute torts under the law of the state where the action occurs, the plaintiffs must proceed under the Federal Tort Claims Act ("FTCA"). The FTCA, in 28 U.S.C. § 2679(b)(1) provides that, with minor exceptions, an action for injury:

> arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim ...

The Attorney General is obligated by statute to defend any such civil action against an employee of the federal government, 28 U.S.C. § 2679(c), and the Act provides a mechanism by which this may be accomplished when the action is originally filed in state court:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action

6

> or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provision of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2).

The Certification may be done by the United States Attorney for the district where the action is brought, or by the Director of the Torts Branch, Civil Division, Department of Justice, on behalf of the Attorney General. 28 C.F.R. § 15.4 (2004). In this case, the Notice of Removal, in which the United States declared that the four individually named Defendants were acting in the scope of their employment in their interactions with the Roscoes, was filed by the United States Attorney for the District of New Mexico. [Doc. 1]. The Court considers the United States' Attorney's statements to constitute the necessary certification of scope of employment under the FTCA.

In addition to this certification, the individual Defendants each submitted a declaration in connection with the motion currently under consideration, describing his or her involvement with the Roscoes and asserting that all contact with these plaintiffs has come within the scope of the declarant's employment with the IRS.

Cheryl Gibbs states in her declaration that she is a duly commissioned supervisory Revenue Agent with the IRS who supervised the audit of the Roscoe's federal income tax returns in various tax years. She asserts that, "Any action I have taken with regards to the Plaintiffs has been in my capacity as a Supervisory revenue Agent of the Internal Revenue Service." [Declaration of Cheryl

Gibbs, at ¶ 15, attached to Doc. 8].

Mary "Candy" Biggers states in her declaration that she was a duly commissioned Revenue Agent until February 1999 and was assigned to the audit of Benjamin Roscoe's tax returns for certain tax years. She asserts that, "My only contact with Mr. Roscoe has been pursuant to my responsibilities as a Revenue Agent. I have had no contacts with Mr. or Mrs. Roscoe outside my performance of my duties as a Revenue Agent." [Declaration of Mary "Candy" Biggers, at ¶ 3, attached to Doc. 8].

Sam Chavez states in his declaration that he is a duly commissioned Revenue Officer for the IRS and, in that capacity, he was assigned the collection of certain of Benjamin Roscoe's delinquent federal income tax liabilities. He asserts that, "My only contact with Mr. Roscoe has been pursuant to my responsibilities as a Revenue Officer. I have had no contacts with Mr. or Mrs. Roscoe outside my performance of my duties as a Revenue Officer." [Declaration of Sam Chavez, at ¶ 7, attached to Doc. 8].

K. Steve Cordova states in his declaration that he is a duly commissioned Revenue Agent and, in that capacity, was assigned the audit of Benjamin and Geraldine Roscoe's joint income tax return for 1998. He says that the Roscoes' file contained a designation of PDT ("Potentially Dangerous Taxpayer"). He asserts that, "My only contact with Mr. Roscoe has been pursuant to my responsibilities as a Revenue Agent. I have had no contacts with Mr. or Mrs. Roscoe outside my performance of my duties as a Revenue Agent." [Declaration of K. Steve Cordova, at ¶ 12, attached to Doc. 8].

Prior to 1995, the Tenth Circuit held that section 2679(d)(2) meant quite literally what it says: If the United States certified that a defendant federal employee was acting within the scope of his or

her employment at the time the alleged acts occurred, that representation was binding on the Court:

> Where the attorney general certifies that the employees were acting within the scope of their employment at the time of the alleged mishap, the individual defendants must be dismissed from suit and the United States substituted in their place . . . Once the attorney general decides under subsection (d)(1) [of 28 U.S.C. § 2679] to certify an action, the substitution of the United States as a defendant does not admit of discretion . . . The mandatory language of subsection (d) does not permit us to challenge the attorney general's certification.

Aviles v. Lutz, 887 F.2d 1046, 1048-49 (10th Cir. 1989).

Other circuits took the position that the government's certification under § 2679(d)(1) is contestable, and the Supreme Court resolved the split in the circuit in 1995, holding in Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 115 S. Ct. 2227 (1995), that the government's certification is conclusive only for purposes of removal but not for substitution of the United States as defendant. Id., 515 U.S. at 434. After Gutierrez de Martinez, therefore, plaintiffs in the Roscoes' position must be given an opportunity to present evidence that the individual defendants charged in the suit were acting outside the scope of their employment.

The scope-of-employment determination should be made in the context of Fed. R. Civ. P. 56, as a summary judgment ruling. Kimball v. Saffari-Parizi, 889 F. Supp. 424, 426 (D. Colo. 1995). Plaintiffs have the burden of establishing that the government employees' conduct exceeded their scope of employment. Aliota v. Graham, 984 F.2d 1350, 1358 (3d Cir. 1993); Williams v. United States, 71 F.3d 502, 506 (5th Cir. 1995).

In this case the Roscoes argue that, in taking actions which caused them injury, the Defendants were acting "beyond the scope of their authority." [Doc. 15, at 1]. They acknowledge that Defendants are current or former IRS employees whose involvement with Plaintiffs included

9

actions taken in assessing and collecting their tax liabilities. The Roscoes argue, however, that the Defendants also harassed them, defamed them, and committed fraud, extortion, and racial discrimination against them, that these acts were not done in the course of Defendants' work as federal employees, and that the sovereign immunity of the United States therefore does not apply.

The scope-of-employment issue is to be determined in accordance with the law of the place where the alleged acts occurred. Williams v. United States, 350 U.S. 857, 76 S. Ct. 100 (1955); Henderson v. United States, 429 F.2d 588, 590 (10th Cir. 1970). Under New Mexico law, an act of an employee is within the scope of employment if: (1) it was something fairly and naturally incidental to the employer's business assigned to the employee; and (2) it was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee. N.M. UJI-Civ. 13-407; Miera v. George, 55 N.M. 535, 237 P.2d 102 (1951).

An employer may be liable even for the intentional, wanton or malicious torts of its employee, so long as the alleged actions were taken in the course and scope of employment. McCauley v. Ray, 80 N.M. 171, 453 P.2d 192 (1968); Miera v. George, *supra*, 55 N.M. at 539.

Factors to be considered in making the scope-of-employment determination include whether the employee "varied sufficiently from official government business to remove his actions from within the scope of government employment," Spradley v. United States, 119 F. Supp. 292, 293 (D.N.M. 1954) (FTCA action applying New Mexico law); whether the employer had the right to control the employee's actions at the time the alleged acts occurred, McCauley v. Ray, *supra*, 80 N.M. at 180; whether the employee was using a vehicle or other instrumentality provided by the employer and intended to further the employer's business interests, Gonzales v. Southwest Sec. & Prot. Agency,

Inc., 100 N.M. 54, 56, 665 P.2d 810, 812 (Ct. App. 1983); Richardson v. Glass, 114 N.M. 119, 121, 835 P.2d 835, 837 (1992); and whether the acts occurred during normal working hours and not, for example, on a lunch break.  Id., at 121.

Although the issue of scope-of-employment is one of fact, it may be decided on summary judgment if the Court determines there is no genuine issue of material fact.  After considering the parties' submissions in this case, the Court finds that Defendants have met their burden of making a prima facie showing that they were acting in furtherance of their employer's interests, and therefore within the scope of their employment, in all of their dealings with the Roscoes.  Each Defendant describes his or her involvement with the Roscoes in the course of investigating, auditing and attempting to collect the Roscoes' federal taxes, and all of the Defendants state in their declarations that they had no contact with the Roscoes outside of these employment duties.    The Court further finds that the Roscoes have failed to meet their burden, both as the parties opposing summary judgment and as the parties challenging the government's certification, of raising a genuine issue of fact regarding the scope-of-employment issue.  They submit Benjamin Roscoe's affidavit, which repeats vague allegations in complaint that, for example, the Defendants conspired together to "specifically direct substantial emotional distress upon Plaintiffs," that they "publicated [sic] that Plaintiffs made false statements to the government . . . [and] that Benjamin Roscoe is a dangerous person," and that they "conducted a pattern of false, and reckless assessments against Plaintiffs."

The Roscoes give no specifics with regard to these charges.  They provide no admissible evidence supporting a claim that Defendants were not acting in the course and scope of their employment.  They do not reveal the content of the "false statements" which they claim the Defendants accused them of making, or when and in what context the statements were supposed to

11

have been made, and they present no evidence to show that what they told the government was in fact true. [Doc. 16]. The Roscoes also allege that some of the Defendants' investigation and audit activities were conducted "after the limitations had run." But again there are no specifics. They do not state the date(s) on which these limitations periods expired or the basis on which they claim a limitations period existed, nor do they describe exactly what actions they allege were taken by the Defendants outside these periods.

The Roscoes, as noted above, are proceeding *pro se*. Pleadings submitted by *pro se* litigants are to be liberally construed. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972). But while the Court must liberally construe a *pro se* plaintiff's factual allegations, the Court cannot supply additional facts, nor apply legal theories for a plaintiff that assume facts that have not been pled or proved. Dunn v. White, 880 F.2d 1188, 1198 (10th Cir. 1989). Conclusory allegations will not suffice to defeat summary judgment, Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003), and the Court will not construct an argument for a *pro se* plaintiff absent coherent discussion of the issue in question. Drake v. City of Ft. Collins, 927 F.2d 1156, 1159 (10th Cir. 1991).

The Court concludes that Defendants have met their burden of establishing, as a matter of law, that they were acting within the scope of their employment in all of their dealings with the Roscoes. It follows that the United States must be substituted as the sole Defendant in this matter, and the action must "proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title [which establishes the jurisdiction of the federal courts in FTCA actions] and shall be subject to the limitations and exceptions applicable to those actions." 28 U.S.C. § 2679(d)(4); Aviles v. Lutz, *supra*, at 1049. This means that the Roscoes' lawsuit may be

pursued only in strict compliance with the procedures set forth in the FTCA, and it is subject to the exceptions to the waiver of sovereign immunity set forth in 28 U.S.C. § 2680. For both of these reasons, the suit must be dismissed.

The FTCA is a waiver of the federal government's sovereign immunity. Such waivers are strictly construed. McMahon v. United States, 342 U.S. 25, 27, 72 S. Ct. 17, 19 (1951). The government need not waive its immunity at all; therefore, if it chooses to permit suit it may do so under whatever terms and conditions it deems proper, and there must be strict compliance with the conditions imposed. United States v. Sherwood, 312 U.S. 584, 61 S. Ct. 767 (1941); Reynolds v. United States, 643 F.2d 707, 713 (10th Cir. 1981) ("The United States, as sovereign, may not be sued without its consent and the terms of its consent to be sued define the Court's jurisdiction").

A person who brings a court action under the FTCA may do so only after exhausting his or her administrative remedies by filing an administrative claim in writing with the appropriate federal agency. 28 U.S.C. § 2675(a). This requirement is jurisdictional and cannot be waived. Three-M Enterprises, Inc. v. United States, 548 F.2d 293, 294 (10th Cir. 1977).

The purpose of this rule is to give the agency notice of the claim and time to investigate and determine whether the claim is realistic or subject to settlement prior to litigation. Haceesa v. United States, 309 F.3d 722, 734 (10th Cir. 2002), *cert. denied*, 124 S. Ct. 65 (Oct. 6, 2003). Enforcement of the administrative exhaustion requirement allows the agency time to develop the necessary factual background and apply its specific expertise, and promotes judicial efficiency in that the courts may not have to be involved at all, if the agency can resolve the dispute at the administrative stage. McKart v. United States, 395 U.S. 185, 194-95, 89 S. Ct. 1657, 1663 (1969).

The Roscoes do not allege in their complaint that they fulfilled this jurisdictional prerequisite.

In its motion to dismiss, the government asserts that the Roscoes did not file an administrative claim, and the Roscoes do not contradict this assertion but rather continue to maintain that they never intended to bring an action under the FTCA. [Doc. 15, at ¶¶ 3, 14, 22, 108]. The Court therefore accepts the government's assertion that no administrative claim was filed. The filing of an administrative claim is a jurisdictional prerequisite to bringing a court action. Three-M Enterprises, Inc. v. United States, *supra*. It follows that the Court is without jurisdiction to entertain this suit, to the extent the Roscoes allege tort claims against the federal employees.

Although in theory, the Roscoes could file an administrative claim within 60 days after dismissal of this suit, 28 U.S.C. § 2679(d)(5), such an act would be futile. The allegations of the complaint are directed toward the individual Defendants' acts "in respect of the assessment or collection of any tax . . .," 28 U.S.C. § 2680(c), and this brings the complaint squarely within a statutory exception to the waiver of sovereign immunity. Fair v. Swanson, 753 F. Supp. 875, 878 (D. Colo. 1991), *aff'd,* 947 F.2d 953 (table, text in Westlaw), 1991 WL 225805 (10th Cir. 1991). *See also*, Plant v. IRS, 943 F. Supp. 833, 836 (N. D. Ohio 1996):

> This provision reflects the government's strong interest in protecting the administration of its tax system from the burden of constant litigation . . . The sovereign immunity is retained even when, as here, the claims encompass torts and constitutional violations.

The United States also argues that the Roscoes' claims must fail to the extent they appear to allege violations of plaintiffs' constitutional rights against the individual Defendants, including claims of racial discrimination, because such lawsuits against individual federal employees, based on Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), are not cognizable against IRS employees based upon their tax collection activities. For this

proposition, the United States cites Nat'l Commodity & Barter Ass'n v. Gibbs, 31 F.3d 1521 (10th Cir. 1991), and Cameron v. IRS, 773 F.2d 126, 129 (7th Cir. 1985) ("Congress has given taxpayers all sorts of rights against an overzealous officialdom . . ., and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees"). In light of the Roscoes' statements that they do not allege constitutional torts, and are making no attempt to sue under Bivens [Doc. 15, at ¶ 15, 22], the Court need not consider this issue.

Defendants also argue that the Roscoes cannot proceed under 26 U.S.C. § 7433, which deals with suits against the United States for certain unauthorized tax collection activities. The Roscoes concede in their Response to Defendants' motion that 26 U.S.C. § 7433 is not applicable in this case. [Doc. 15, at 5]. In addition, Defendants also raise defenses of statute of limitations and lack of proper service. In light of the Court's resolution of this matter, these arguments need not be reached.

### Recommended Disposition

The court recommends:

1. That the United States be substituted as the Defendant in this case;

2. That Defendants' Motion to Dismiss or for Summary Judgment [Doc. 8] be granted and the case be dismissed with prejudice; and

3. That Plaintiffs' Motion for Default Judgment Against Cheryl Gibbs [Doc. 23] be denied on the merits.

_____
Lorenzo F. Garcia
Chief United States Magistrate Judge